argument not to exceed 15 minutes per side. Mr. Pickrell, you can proceed for the appellant. May it please the court, my name is Mark Pickrell and I represent the appellant in this case. I'm going to try to refer to him as the appellant. I've worked for a long time in this court, trying to use the names of parties, but in the nature of this case being a juvenile proceeding, I'm going to call him the appellant and if I mess up then it's just to have him. We're defendants. What? We're defendants. I'll try either one. The court has often asked us to try to not use those words so that you can be clear about who we're talking about, both in our briefs and orally. One's a male and one's a female. So I'll probably go with JAS as best I can, Your Honor. I've asked for two minutes for rebuttal. Unless the court has questions about the evidentiary issues raised in our brief, I'm going to focus on the sufficiency of the evidence. I just have one question out of curiosity. So we had the Vanderbilt Clinic on this, on the briefs, but they're not here anymore? I am running the Vanderbilt Clinic this year, so I substituted in. Okay. I'm sorry, I should have been clear. I'm so used to being a regular appointed attorney this year and there's not a student here because there were some issues. I had concerns about ability to consent and also ability to get students ready to go. Yeah, that's why. But unless the court has questions about the evidentiary issues, I'd like to spend my time discussing sufficiency of the evidence. Okay. Well, I do have a quick question for you on the evidentiary thing. Certainly, Your Honor. As you know, we can affirm on any basis supported by the record. The court admits it under 807, I think. But we also have this rule, I think it's 801 D1B, that allows admission to rebut an attack on the person's credibility when they testify in court. Right. And you say that is not applicable here because this isn't a charge of recent fabrication? Am I getting that right? I think, yes, Your Honor. It's been a long morning. Yes. But setting that aside, the rule currently allows for admission of a hearsay statement under this specific provision. There's another section, too, if the witness's credibility has simply just been impeached or he's been crossed as having made inconsistent statements. Isn't that just an independent basis on which, I'm not talking about this statement right here, but a statement can be admitted under 801 D1B? Right. And the answer, Your Honor, is I think if you look at the language of the rule, the question, and it was not covered in the brief significantly, is when is a party permitted to bring in evidence of a prior consistent statement? Right. So then the question has to be, well, what does the other party have to do to say that there's been some inconsistency? And, Your Honor, let me just say factually that there was an inconsistency in K.V.'s statements throughout time that was presented on cross-examination that would appear rightfully to challenge the consistency of the statements over time. Even though it's not about a fabrication in this case of testimony, there is that factually, as an officer of the court, obviously I want the court to be aware that there was a defense presented that the statements were inconsistent over time. Right. And I think that Your Honor is definitely correct that even if this doesn't go under the catch-all, it may very well be appropriate under the prior consistency. Right. Well, that's a remarkably candid answer. I appreciate it. I can't remember the exact language of the provision in 801 to which Judge Kethledge refers. Isn't it something like to rebut a charge of recent fabrication or isn't there some other or language, some more broader catch-all? Yes, Your Honor, and that's why I'm taking the statements that I've made today. And it's why I really wanted the court to focus on the sufficiency of the evidence arguments. Okay. Well, I give you full credit for your candor. And that's really the issue here is, and I would hope that the court would look at the Eighth Circuit's approach to Plenty of Arrows, Reddist, and White Bull and see whether or not this court and its cases of a similar nature approaches Jackson v. Virginia the same way that the Eighth Circuit does. I must admit, having looked at all of this court's cases and all the Eighth Circuit's cases, there does not seem to be a consistency in the approach. And so with the time that I have, I'd like to talk about Jackson v. Virginia and how it applies in the context of cases like this one. With Jackson v. Virginia, obviously due process requires that there be the power of appellate courts to review a finding by a trial court where, and the question is, is whether or not the charges alleged have been proven beyond a reasonable doubt. And so logically what that requires is that the appellate court has to look at that and say, is there any rational finder of fact you could look at this and say there was no reasonable doubt? So it's the absence of reasonable doubt. And respectfully, on behalf of JAS, I would submit that there is reasonable doubt here under Jackson v. Virginia, so much like the way that the Eighth Circuit's treating it, that I would like the court to really look at this question about what do we do when we have a child's vague statements about a sexual act, not as defined under the statute, but as one would normally refer to a sexual act, when we have charges of a sexual act that is very specifically defined by Congress in 18 U.S.C. 2246-2A. It's important to note, Your Honor, that 2246-2A has very specific anatomical requirements for there to be a violation. And the Eighth Circuit in Plenty Arrows emphasized that there must be proof of those anatomical connections in order for there to be guilt under the Jackson v. Virginia standard. And here, Mr. JAS respectfully submits that there was not sufficient proof, as in the Eighth Circuit cases that we cite in our brief, sufficient for this court to affirm the conviction. I mean, my recollection of those Eighth Circuit cases is there were the child, the victim, I guess, or the putative victim, made references just to her midsection, I think, in one of those cases. My point is, my recollection is that the references there were arguably more general than they were here. I must respectfully disagree, Your Honor. And that's what I'm trying to enlist. Specifically, it had to do with much more defined area of the body than the victim in this case. And I am going to refer to her as the victim. I don't want to prejudice my client. I just think it's, at this point, easier. Or you could say the girl. The victim here. Okay. Pointed to her midrib, the area of her crotch, is what, when I was raised, that's what we would call it, and nothing further. Whereas, in the Eighth Circuit cases, it was right next to the vagina, the hole. It was right next to the derriere. And so, in those Eighth Circuit cases, actually, the testimony of the victim was far more specific than the testimony that occurred here. No. Okay. I mean, yes, in the sense that there were more specific references to parts of the body, I guess. I mean, right next to one hole or something. Correct. Much closer than the middle or, in this case, pointing to the crotch. But yet, there was obviously that ambiguity. Yes. Absolutely, Your Honor. Right next to, and I mean, I don't think I need to explain it further. Yeah. Understood. And it's that ambiguity or that vagueness, as the Eighth Circuit referred to it, that is the danger in these cases. I understand that. But I think, I mean, in this case, we do have more than just the crotch. I mean, she said he put his pee in her pee. Correct.  And if I could address that, Your Honor, the statute segregates the penis from the vulva. Men and women don't have the same ones. So whatever she was referring to logically, although this is a child we're talking about, to whatever she was referring to logically is something that men and women both have, his pee and her pee. Couldn't a jury, just looking at that part of her testimony, conclude that she's referring to the part of the anatomy one uses to pee, to urinate?